# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NORMA MALDONADO, on her own behalf
and on behalf of those similarly situated,

        Plaintiff,

v.

ALTA HEALTHCARE GROUP, INC. d/b/a
AIDEN SPRINGS ASSISTED LIVING, a
Florida Profit Corporation, and ALBERT L.
GREEN, individually,

        Defendants.

CIVIL ACTION NO.  6:12-cv-1552-ORL-36DAB

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendants Alta Healthcare Group, Inc. d/b/a Aiden Springs Assisted Living ("Alta") and Albert L. Green ("Green") (collectively "Defendants") file their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum of Law (Doc. 47), and state as follows:

## I.     INTRODUCTION.

Plaintiff Norma Maldonado's motion should be denied because she fails to set forth any undisputed material facts warranting judgment in her favor.  Her motion is based on inaccurate statements of the evidence, disputed or immaterial facts and, most significantly, ignores her own testimony that establishes the lack of credibility and legitimacy of her claims.  Maldonado sets forth no undisputed material facts to establish that Defendants violated the FLSA, that she is entitled to additional compensation from Defendants or, more significantly, that Defendants willfully violated the FLSA.  For this

reason, Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum of Law must be denied.

## II.   DEFENDANTS' RESPONSE TO MALDONADO'S "STATEMENT OF MATERIAL FACTS NOT IN DISPUTE."

**No. 2**

This is an inaccurate and disputed statement. Alta Healthcare Group, Inc. operated three assisted living facilities under three fictitious names during the time period relevant to the Complaint - Aiden Springs Assisted Living Facility ("Aiden Springs"), Summit Care Assisted Living Facility ("Summit") and Alta Healthcare at Deerwood ("Deerwood") (Green dep. 8:15-18; 32:14-15).

**No. 3**

This is an inaccurate and disputed statement.  Maldonado worked at Aiden Springs, Summit and Deerwood.  During the time period relevant to the Complaint, June 14, 2010 through October 14, 2010, Maldonado worked at Summit.  (Maldonado dep. 56:15-25; Doc. 1).  Maldonado's last day worked at Summit was October 14, 2010. (Ex. 6 to Maldonado's depo; 185:4-9). Maldonado was absent from October 16-24, 2010 and upon her return, was transferred to Deerwood. (Ex. 6 to Maldonado's dep.; 185:4-9; Ex. 9 to Maldonado's dep.; 188:10-20; Green dep. 9:4-10; 32:10-17).  Maldonado's claims in this matter are limited to the time she worked at Summit. (Maldonado dep. 105:20-25; 106:1-3; 130:12-17; Ex. 4 to Maldonado dep., p. 6; Green dep. 9:4-10).  As a result, Maldonado incorrectly named Alta Healthcare Group, Inc. d/b/a Aiden Springs Assisted Living as a defendant in this action.

**Nos. 4 and 5.**

These are inaccurate and disputed statements.  Alta Healthcare Group, Inc. is not an assisted living facility providing the referenced services; it is a corporation that operates assisted living facilities which are themselves licensed under Chapter 429 of the Florida Statutes to provide the referenced services.  (Green dep. 6:22-25; 8:15-18; 32:14-15).

**Nos. 7 and 9.**

These are inaccurate and disputed statements. Maldonado cannot accurately state the number of hours she was scheduled to work at Summit, despite having submitted, on three separate occasions, sworn answers to the Court's Interrogatories attesting to the accuracy of the hours she claims she worked entitling her to additional compensation in this case. (Maldonado dep. 69:9-12; 213:11-25; 214:1-10; 218:10-25; Docs. 19-1. 26-1, 30-1). Furthermore, its is immaterial what hours Maldonado was scheduled to work. What is relevant are the number of hours she did, in fact, work. Maldonado does not set forth any undisputed, material facts regarding the number of hours she did, in fact, perform compensable work.  For example, Maldonado claims she usually finished her daily tasks between 9:00 and 10:00 p.m. and began her day around 5:00 or 5:30 a.m. (Maldonado dep. 216:22-25; 217:1-16). Although Maldonado alleges that she never slept for more than eight hours, she cannot estimate how much time she spent assisting residents during her nighttime shifts.  (Maldonado dep. 92:15-18; 115:16-23).

**No. 8.**

This is an inaccurate and disputed statement.  Green testified that "someone with CPR must be there at all times." (Green dep. 97:20-21).   His statement did not specifically reference Maldonado or First Aid.

**No. 11.**

These are inaccurate and/or incomplete statements and, even if true, immaterial. The week Maldonado was paid for 42 "day shift" hours was the week she worked at Deerwood, and not a week subject to her claims in this action.  (Green dep. 89:23-25; *See* also response to No. 3 above).  In addition, Maldonado recalls weekends during which she left Summit at 8:00 a.m. and returned at 4:00 p.m. and other weekends she left at 8:00 a.m. and returned at 8:00 p.m. the following day. (Maldonado dep. 215:14-19). Therefore, she was not "scheduled to be present nightly from 8:00 p.m. to 8:00 a.m."

**Nos. 12 - 15.**

These are inaccurate and/or incomplete statements and, even if true, immaterial. Defendants' agreement with Maldonado stated:

> Live-in Staff are those who have chosen to reside on the premises and has an implicit value of $1,085 per month. In exchange, these staff have agreed to maintain an updated CPR certificate and assist a resident if an emergency arises during the night. The night period starts at 8 pm and ends at 8 am. The Live-In Staff is off duty during these hours and in fact, is presumed to be asleep as the law allows. If the Live-In Staff decides to leave during the night period, they must inform the administrator in order that 24 hour CPR coverage can be maintained.

(Maldonado dep. Ex. 10; 197:17-25; 198:1).  No where in the agreement does it state that wages would not be paid for any work performed at night. Interestingly, as noted in

Maldonado's motion, she "contests the existence of such as agreement" but agrees that she understood that she was to live at Summit. (Maldonado dep. 207:22-25). Maldonado also understood that the times she was not scheduled to be at work or present at Summit she was free to do whatever she wanted to do. (Maldonado dep. 96:10-14).

**No. 16.**

This is an inaccurate and disputed statement. Defendants do not acknowledge that Maldonado did, in fact, perform any work at night. Defendants simply acknowledge that Maldonado documented in the Resident Observation Logs ("ROLs") that she allegedly performed work at night. (Green dep. 217:1-4).

If fact, Maldonado cannot estimate how much time she spent assisting residents during her nighttime shifts. (Maldonado dep. 115:16-23). She also does not recall having any specific conversations with Green regarding the amount of time she was engaged with a resident during any particular nighttime incident. (Maldonado dep. 145:4-11). She also does not recall having any conversations with Green about being compensated for the time she alleges she spent working during her nighttime shift. (Maldonado dep. 146:14-17).

**Nos. 17 and 18.**

These are inaccurate and disputed statements and, even if true, immaterial. Maldonado's statements in the ROLs do not, in and of themselves, establish that she is entitled to additional wages, particularly since Defendants had no knowledge that she performed such work.  (Green dep. 209:21-25; 210:2-3). Maldonado admits that during her nighttime shifts, she watched movies, read, talked on the phone and slept. (Maldonado dep. 114:12-25; 115:1).

Furthermore, Maldonado testified that she made the notations in the ROLs "that same day... that next day" or she would do a weekly report. (Maldonado dep. 79:17-22). She later testified that she "would try to annotate them as much as possible at the moment when it happened, and if not, then [she] would do it later in the day or later on at night." (Maldonado dep. 219:15-22). Maldonado could not recall if she ever saw Green reviewing the ROLs. (Maldonado dep. 82:20-25; 21:1). Although Maldonado claims, in general, that she informed Green of "every incident," when asked about each specific entry, she does not recall having any specific conversations with Green regarding the amount of time she was engaged with a resident during any particular nighttime incident. (Maldonado dep. 83:4-5; 145:4-11). Green could not recall if he ever reviewed the ROLs during 2010 and otherwise had no personal knowledge that Maldonado performed work during her nighttime shift.  (Green dep. 195:15-21; 209:21-25; 210:2-3).

Significantly, Maldonado cannot determine with any specificity how much time she allegedly performed compensable work with respect to any particular entry in the ROLs that allegedly reflect she performed work at night.  (Maldonado dep. 191:8-197:13).

**Nos. 19-24.**

These statements are immaterial and do not establish that Maldonado is entitled to summary judgment on the issue of willfulness. There is no evidence whatsoever in this case regarding the scope or details of Knight's allegations against Alta Healthcare Group, Inc.  More specifically, there is no evidence regarding her position or job duties with Alta Healthcare Group, Inc., the basis for her claim of alleged overtime violations or the basis for the settlement reached with Knight.   Furthermore, the terms of the settlement agreement Alta Healthcare Group, Inc. reached with Knight specifically state that Alta

Healthcare Group, Inc. denied liability and any wrongdoing with respect to Knight. There is certainly no evidence that Alta Healthcare Group, Inc. was, in fact, found to be in violation of any requirements under the FLSA in the Knight matter, or as required to establish willfulness, the requirements similar to those at issue in this case.

Specifically with respect to No. 22, this is an inaccurate and disputed statement and, even if true, immaterial to Maldonado's claims. Green testified that he did not recall having any conversations regarding the legal compliance of wage payments to Maldonado.

Specifically with respect to No. 24, this is an inaccurate and disputed statement. Green testified that he could not answer the question, "Did you take the allegations seriously?" because he could not recall what he knew about the lawsuit.  (Green dep. 278:19-25; 279:1-9).

### III.   MALDONADO'S ARGUMENT THAT ALTA HEALTHCARE GROUP, INC. IS AN ENTERPRISE COVERED UNDER THE FLSA IS INACCURATE AND IRRELEVANT.

While Maldonado did perform work at Aiden Springs, it is undisputed that Maldonado's claims relate only to the time she performed services at Summit.  As a result, Maldonado incorrectly named Alta Healthcare Group, Inc. d/b/a Aiden Springs Assisted Living as a defendant in this action.  Furthermore, Alta Healthcare Group, Inc. is not an assisted living facility; it is a corporation that operates assisted living facilities which are themselves licensed under Chapter 429 of the Florida Statutes.  Maldonado's argument that Alta Healthcare Group, Inc. is a covered enterprise under 29 U.S.C. § 203(s)(1)(B) is therefore inaccurate and irrelevant.

**IV.    MALDONADO   DOES   NOT   SET   FORTH   ANY   UNDISPUTED MATERIAL FACTS TO PROVE THAT THE PARTIES' AGREEMENT TO EXCLUDE SLEEPING HOURS FROM COMPENSABLE TIME WAS UNREASONABLE AS A MATTER OF LAW.**

The FLSA requires every employer to pay at least the statutory minimum wage, and pay time and a half for every hour worked in excess of 40 hours per week for every covered employee in its employ. 29 U.S.C. §§ 206(a), 207. The term "employ" is defined as "to suffer or permit to work" and "[w]ork not requested but suffered or permitted is work time." 29 U.S.C. § 203(g) and 29 C.F.R. § 785.11.

Where an employee like Maldonado resides on an employer's premises, however, 29 C.F.R. §785.23 provides the following guidance in determining the number of hours worked:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

Maldonado fails to present sufficient undisputed material facts to establish that Defendants' agreement with her regarding her compensable hours worked was unreasonable.  It is undisputed that Maldonado received $10 per hour for each daytime hour up to 40 in a workweek, $15 for each daytime overtime hour each workweek and also received room and board, with an implicit value of $1,085, in exchange for her presence during scheduled nighttime shifts.  Maldonado admits that during her nighttime

shifts, she watched movies, read, talked on the phone and slept and also admits that the times she was not scheduled to be at work or present at Summit she was free to do whatever she wanted to do.

Maldonado's argument that she is entitled to summary judgment on the basis that the agreement was unreasonable is premised on her claim that she actually performed compensable time during her scheduled nighttime shifts. In order for Maldonado to prevail on her claim, she must prove that she was suffered or permitted to work without compensation. 29 U.S.C. § 201 *et seq.*  More specifically, she must show that: (1) she worked overtime hours without compensation, and (2) Defendants had knowledge, or should have had knowledge, of her overtime work. *See Gaylord v. Miami-Dade Cnty.*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999). Maldonado fails to present any undisputed material facts that she did, in fact, perform such compensable work. Maldonado admits that she cannot accurately state the number of hours she was scheduled to work at Summit or the number of hours she did, in fact, work.  The fact that Maldonado may have noted in the ROLs time she allegedly performed compensable work during her scheduled nighttime shifts is not dispositive of her in fact working such time or her entitlement to be compensated for such time, when she cannot articulate how long she spent performing work on each occasion and cannot present undisputed material facts to prove Defendants were aware of such work.  Maldonado's inconsistent testimony regarding how much time she allegedly spent performing compensable work during her scheduled nighttime shifts therefore prevents any findings that she is entitled to summary judgment on the basis that Defendants violated the FLSA.

Furthermore, there is no evidence that Defendants had any policy or practice of not compensating live-in care staff for compensable work performed during scheduled nighttime shifts to support a finding that the agreement was unreasonable.

**V.     MALDONADO DOES NOT SET FORTH ANY UNDISPUTED MATERIAL FACTS TO PROVE THAT DEFENDANTS HAD KNOWLEDGE, OR SHOULD HAVE HAD KNOWLEDGE, OF HER NIGHTTIME WORK.**

Notwithstanding that Maldonado fails to set forth any undisputed material facts establishing that the agreement was unreasonable and that she did, in fact, perform compensable work during her scheduled nighttime shifts, she fails to set forth any undisputed material facts establishing that Defendants were aware of compensable work she allegedly performed during her scheduled nighttime shifts.

"At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists." *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x. 378, 381 (6th Cir. 2006).   When an employer has no knowledge that an employee is engaged in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours in not a violation of § 207.   *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

Here, Maldonado has failed to present any undisputed material facts that Defendants were aware of compensable work she allegedly performed during her

scheduled nighttime shifts. Rather, the undisputed facts are that Defendants had no knowledge of such work. Green did not review the ROLs during the relevant time period and did not have any conversations with Maldonado regarding any compensable work she allegedly performed during her scheduled nighttime shifts.

## VI.    MALDONADO DOES NOT SET FORTH ANY UNDISPUTED MATERIAL FACTS TO PROVE THAT DEFENDANTS' WILLFULLY VIOLATED THE FLSA.

Even if Maldonado could prove that Defendants violated the FLSA such that she is entitled to additional compensation, she cannot meet her burden of proving that Defendants willfully violated the FLSA to be entitled to any damages.

Maldonado has the burden of proving that Defendants "either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). Maldonado claims Defendants willfully violated the FLSA for essentially five reasons, none of which satisfy this burden.

First, Maldonado claims that Defendants acknowledge that they were aware she was owed overtime for hours worked over 40. The fact that Defendants did, in fact compensate Maldonado for all daytime hours she worked over 40 in a workweek certainly does not prove willfulness, but rather Defendants intent to comply with the FLSA.

Second, Maldonado claims that, "Defendants knew that their ability to exclude some time from Plaintiff's compensable time was founded on the premise that residents were sleeping, and Plaintiff was not performing any work during the excluded hours." Again, this understanding was based on 29 C.F.R. §785.23 and demonstrates Defendants intent to comply with the FLSA. Even if Defendants were mistaken in their

understanding of 29 C.F.R. §785.23, "negligence, or an incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA." *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998).

Third, Maldonado claims that Defendants "knew or with reasonable diligence should have known that [she] performed overtime work during the hours excluded from compensable time." This argument is insufficient to establish that Defendants violated the FLSA and also insufficient to establish willfulness since Defendants had no knowledge of the compensable work Maldonado allegedly performed during her scheduled nighttime shifts. *See Reich v. Newspapers of New England,* 44 F.3d 1060, 1080 (1st Cir. 1995) (evidence that employer was aware of FLSA, attempted unsuccessfully to limit employees to 40 hours per week, paid overtime for *reported* hours over 40, and *failed* to pay for unreported hours of which it should have known does ***not*** itself prove willfulness).

Fourth, Maldonado claims that Defendants failed to compensate her at her overtime rate for her night-shift hours. Not only is this argument insufficient to establish that Defendants violated the FLSA, it is insufficient to establish willfulness again given that Defendants had no knowledge of the compensable work Maldonado allegedly performed during her scheduled nighttime shifts.

Finally, Maldonado's reliance on the Knight case to establish willfulness also fails. Maldonado fails to present any undisputed material facts regarding the scope or details of Knight's allegations against Alta Healthcare Group, Inc., Knight's position or job duties with Alta Healthcare Group, Inc., the basis for her claim of alleged overtime violations or the basis for the settlement reached with Knight. Furthermore, the terms of the settlement agreement Alta Healthcare Group, Inc. reached with Knight specifically state that Alta

Healthcare Group, Inc. denied liability and any wrongdoing with respect to Knight. There is certainly no evidence that Alta Healthcare Group, Inc. was, in fact, found to be in violation of any requirements under the FLSA in the Knight matter, or as required to establish willfulness, the requirements similar to those at issue in this case. Furthermore, the mere failure to seek legal advice, standing alone, is insufficient to establish willfulness. *McLaughlin,* 486 U.S. at 134-35.

V.    **CONCLUSION.**

For the foregoing reasons, Defendants request that Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum of Law be denied.

By:s/Chelsie J. Flynn
Chelsie J. Flynn
Florida Bar No. 598208
FORD & HARRISON LLP
300 South Orange Avenue
Suite 1300
Orlando, FL  32801
Tele:  (407) 418-2300
Fax:   (407) 418-2327
E-mail:  cflynn@fordharrison.com
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 18, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Angeli Murthy, Esquire, of Morgan & Morgan, P.A. at amurthy@forthepeople.com.

s/Chelsie J. Flynn
Chelsie J. Flynn

Orlando:216044.1